**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff(s), | ) ) | Case No. 4:20-cv-01482-SRC |
| vs. | ) ) | |
| JOSEPH SCHMITT, et al., | ) ) | |
| Defendant(s). | ) | |

## <u>Memorandum and Order</u>

After a night of drinking at Bomber O'Brien's Sports Bar & Grill, off-duty police officers Joseph Schmitt and William Olsten attempted to execute an arrest in the wee hours of the morning.  Their target, the pseudonymously-named S.D., was in a van in the Bomber O'Brien's parking lot, smoking marijuana.  Schmitt and Olsten pulled S.D. from the van and forced him to the ground.  S.D. was armed, and he fired two bullets into Olsten, wounding him.  As S.D. fled from the scene, Schmitt shot S.D. eight times, causing permanent and severe injuries.  At least that's what the pleadings state.

S.D. filed a civil action against Schmitt, the City of St. Louis, and others in the Circuit Court for the City of St. Louis, Missouri, alleging battery, assault, and negligence.  Doc. 19-1; Doc. 1-3.  The City refused to defend Schmitt in the civil action, so Safeco Insurance Company of America reluctantly assumed Schmitt's defense under Schmitt's personal homeowner's insurance policy.  Doc. 19 at ¶¶ 45, 62–68.  Safeco filed this declaratory judgment action seeking, among other things, a declaration that the City has a duty to defend and indemnify Schmitt against S.D.'s civil claims.  Doc. 19 at ¶¶ 57–60.  The City filed a motion to dismiss all of Safeco's claims against it, which the Court grants.  Doc. 29.

## I.      Facts and background

For purposes of considering the City's motion to dismiss, the Court accepts all well-pleaded factual allegations as true.  *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff Safeco Insurance Company of America filed a complaint against Defendants Joseph Schmitt and S.D., seeking declaratory relief that it owes no coverage under Schmitt's homeowner's policy for the claims asserted in state court.  Doc. 1.  Safeco claims that the policy excludes coverage for S.D.'s injuries arising from the shooting incident on April 21, 2018.  *See id.*  Safeco then amended its complaint to include claims against the City of St. Louis, asserting that the City has an obligation to defend and indemnify Schmitt in the underlying action as well as to reimburse Safeco for its defense of Schmitt.  Doc. 19 at ¶¶ 54–70.

Schmitt demanded that Safeco defend him in the underlying action after the City refused to defend him.  *Id.* at ¶ 63.  The City refused to undertake Schmitt's defense even after Safeco tendered the defense to the City on four separate occasions.  *Id.* at ¶¶ 65–66.  Safeco observes that the City maintains a self-insurance fund for covering the defense and indemnity of its law enforcement officers.  *Id.* at ¶¶ 32–33.  In Count 1, Safeco requests that the Court enter a declaratory judgment that the City is obligated to assume the defense and indemnity of Schmitt in the underlying action.  *Id.* at ¶ 60.  And in Count 2, Safeco seeks an equitable subrogation award for Safeco's fees and costs incurred in defending Schmitt.  *Id.* at ¶ 70.  These are the only counts asserted against the City.  *Id.* at ¶¶ 54–70.

## II.     Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The notice pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is

entitled to relief."  To meet this standard, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).  This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  The Court must grant all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]"  *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).  However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation.  *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted).

## III.   Discussion

The City moves to dismiss both counts against it in Safeco's amended complaint for failure to state a claim.  Doc. 29; *see also* Fed. R. Civ. P. 12(b)(6).  As to Count 1, the City argues that Safeco does not allege plausible, nonconclusory facts to show the City had a duty to defend and indemnify Schmitt against S.D.'s civil claims.  Doc. 29 at ¶ 1.  As to Count 2, the

City contends that Safeco fails to establish the elements of an equitable subrogation claim.  *Id.* at ¶ 2.  The Court addresses these arguments in turn.

### A.      Count 1 – duty to defend and indemnify

The City moves to dismiss Count 1 of Safeco's amended complaint, arguing that Safeco failed to establish a duty owed by the City to defend and indemnify Schmitt.  Doc. 30 at 3–5. The City contends that Safeco provided no statutory or contractual basis for an obligation to defend and indemnify Schmitt.  *Id.* at 3.  The City points to *Roberts v. St. Louis*, 242 S.W.2d 293, 295 (Mo. App. 1951), which held that the City of St. Louis had no duty to defend and indemnify a police officer sued in state court.  *Roberts* explained that section 2, article 10 of the St. Louis City Charter did not create an obligation for the City Counselor to defend civil suits against city police officers.  *Id.* at 297–298 (section 2, article 10 required the City Counselor to "render the police department all legal advice and service required by it.").  *Roberts* explained that the City had discretion to defend and indemnify an officer in a civil action, but the City did not have to defend the officer as it was not "a matter of right."  *Id.*

Safeco claims that the City's maintaining a legal expense fund to defend and pay claims on behalf of its employees obligates the City to defend and indemnify all of its police officers for alleged police misconduct.  Doc. 34 at 7–8.  In *Green v. City of St. Louis*, 2020 WL 7056015, at *6–8 (E.D. Mo. Dec. 6, 2020), the court recognized that the City of St. Louis uses its legal fund, the Public Facilities Protection Corporation ("PFPC"), to pay judgments against the City and its employees.  *Green* allowed the plaintiffs to proceed with discovery on whether the City had waived sovereign immunity for state-law tort claims against it by maintaining self-insurance coverage through the PFPC.  *See id.* at *8.  Importantly, *Green* did not address whether the very existence of the PFPC obligated the City to defend and indemnify its employees.  *See id.*

4

Safeco compares this case to *Kershaw v. City of Kan. City*, 440 S.W.3d 448, 458 (Mo. App. W.D. 2014), which held that Kansas City had a duty to pay a negligence judgment obtained by one of its employees against another one of its employees for a vehicle collision.  In *Kershaw*, Kansas City assumed a legal duty to pay for tort damages caused by one of its employees "by expressly agreeing to indemnify [the defendant employee]."   440 S.W.3d at 456 ("The question before us is whether the City's ordinance constitutes a clear and unequivocal agreement to allow recovery from the City Legal Expense Fund by [the defendant employee] in this case.").  The court interpreted section 2–1685 Kansas City's Code of Ordinances, titled "City legal expense fund," which provided:

> (b) There is hereby established a fund to be known as the city legal expense fund, the purpose of which is **to enable the city to pay, in whole or in part, claims for various losses and liabilities incurred by the city**, except that no payments from the fund are to be made for claims or lawsuits in which the city has immunity under section 537.600 RSMO, or other applicable law, either statutory or case law.
> . . .
> (g) Use of the city legal expense fund. **Losses payable from the city legal expense fund shall be as follows**:
> . . .
> (2) **Claims made by third parties based on liability of the city, its agents, representatives, officials, officers, or employees**, if such claims are not barred by sovereign, governmental, official immunity, and the public duty doctrine, in accordance with Section 537.600 RSMO, or other applicable law, either statutory or case law based on a final judgment of a court of competent jurisdiction.

Section 2–1685(g), Code of Ordinances of the City of Kansas City, Missouri (2009) (emphasis added).

The court explained that the plain text of section 2–1685(b) "does not clearly indicate the purpose of section 2–1685(g), so the court analyzed caselaw on the purpose of the similar Missouri State Legal Expense Fund.  *Kershaw*, 440 S.W.3d at 458.  The court cited Judge Blackmar's opinion in *Cates v. Webster*, 727 S.W.2d 901, 907 (Mo. banc 1987) (Blackmar, J.,

concurring in part and dissenting in part), which explained the purpose of the State Legal
Expense Fund as follows:

> The State Legal Expense Fund exists to protect the covered employees from the
> burden and expense of civil litigation relating to the performance of their duties.
> The purposes are apparent. A competent employee, who is in demand elsewhere,
> may be unwilling to work for the state without protection. Those who do serve may
> be unwilling to take necessary risks for fear of litigation.

The court found it "logical that this would be the purpose of section 2–1685(g) as well, as the
language of the State Legal Expense Fund statute and City Legal Expense Fund ordinance is
similar, and the same considerations prompting protection of state employees also apply to city
employees." *Kershaw*, 440 S.W.3d at 458.

Construing section 2–1685(g) in light of this purpose, the court determined that the use of
the word "shall" in the ordinance imposed "a mandatory duty on the City to pay judgments such
as the one against [the employee] in this case." *Kershaw*, 440 S.W.3d at 461 ("Generally the use
of the word 'shall' connotes a mandatory duty." (internal citations omitted)).  The court observed
that the State Legal Expense Fund statute contained the same "shall" language, imposing a
mandatory duty on the State:  "Moneys in the state legal expense fund **shall be available** for the
payment of any claim or any amount required by any final judgment rendered by a court of
competent jurisdiction against: . . . Any officer or employee of the State of Missouri[.]" *Id.* at
461 n.14.  The court concluded that section 2–1685(g) "clearly and unequivocally establishes a
duty on the City's part . . . to pay [the defendant employee] on the Kershaws' negligence
judgment." *Id.*

Based on *Kershaw*, Safeco contends that the City of St. Louis's PFPC created the same
duty for the City to defend and indemnify its employees, yet Safeco failed to provide a similar
statute or city ordinance where the City arguably assumed this kind of responsibility.  Doc. 34 at

8–11.  Safeco only cites section 3.10.040(H) of the Revised Code of the City of St. Louis, part of

a provision defining the duties of the City Counselor:

> In addition to the duties prescribed in the Charter and in existing ordinances not inconsistent with the Charter, **it shall be the duty of the City Counselor**:
>
> A. To initiate and prosecute in the Circuit Court all proceedings relating to the appropriation of any private property or any easement or use therein for any public use, or arising out of any public improvement or work which will damage private property, as prescribed and required in Article XXI of the Charter;
> . . .
> H. To prepare all charges and to prosecute and to defend **before the City Courts, or Justices of the Peace, or the St. Louis Court of Criminal Correction,** all actions on behalf of the City, or emanating from the Board of Police Commissioners, or any department of the City, and **defend before such courts all actions against any officer or servant or agent of the City, or the Board of Police Commissioners, on account of his acts**, and to attend to appellate courts to all appeals or writs of error in any case originating as aforesaid;
> . . .

Section 3.10.040, Revised Code of the City of St. Louis (1994).

Section 3.10.040(H) expressly provides for the defense of City employees "before the

City Courts, or Justices of the Peace, or the St. Louis Court of Criminal Correction."  *See id.*  The

Court examines whether section 3.10.040(H) obligates the City to defend and indemnify Schmitt

in the underlying action.  This requires the Court to determine whether the language "the City

Courts, or Justices of the Peace, or the St. Louis Court of Criminal Correction" encompasses the

underlying action in the Circuit Court.  Doc. 1-3.

Under section 3.08.040 of the Revised Code, "City Courts" are municipal courts with

"jurisdiction of all suits for the recovery of any fine, forfeiture or penalty imposed for the

violation or breach of any ordinance, which suits and proceedings therein shall be in the nature

of a civil action." *See also State ex rel. & to Use Bouckaert Bros. v. Mathews*, 159 S.W. 2d 767

(Mo. 1942) (City Courts have jurisdiction of all civil cases arising from the violation of St. Louis

City ordinances).  The underlying case is not in the "City Courts" or any other municipal court,

nor does it involve allegations regarding St. Louis City ordinances.  Doc. 1-3.  Thus 3.10.040(H)'s reference to the "City Courts" does not "clearly and unequivocally establish" the City's agreement to defend the action against Schmitt.

Justices of the Peace were "special courts" of the state, like magistrate or probate courts, "which do not proceed according to the common law."  *Rice v. Lucas*, 560 S.W.2d 850, 857 (Mo. 1978).  The Justices of the Peace were replaced by magistrate courts in 1945, which took on the same "law, practice procedures, administration and jurisdiction" as the Justices of the Peace.  *Id.* at 856.  The magistrate courts were abolished in 1979 by constitutional amendment, and their duties were assigned to Associate Circuit Judges.  *Brainchild Holdings, LLC v. Cameron*, 534 S.W.3d 243, 246 (Mo. 2017).  The record indicates that the underlying case is pending before a Circuit Judge, not an Associate Circuit Judge, and Safeco provides no information to the contrary.  Doc. 1-3; Doc. 34 at 1–3.  The plain text of section 3.10.040(H) specifying matters before "Justices of the Peace" might, at best, support an argument that the City has a duty to defend a case pending before an Associate Circuit Judge.  But the Court does not reach that issue and only holds that the plain text of the ordinance does not "clearly and unequivocally establish" the City's agreement to defend the action against Schmitt.

The St. Louis Court of Criminal Corrections was historically "an inferior[] court, of limited jurisdiction and statutory origin" which also did not proceed "according to the course of the common law."  *Ex parte O'Brien*, 30 S.W. 158, 161 (Mo. 1895); *see also City of St. Louis v. Vetter*, 293 S.W.2d 140, 143 (Mo. App. 1956) ("[T]he proceedings of said court shall be governed by the laws regulating proceedings and practice in criminal cases[.]").  This court was "statutorily created so as to have exclusive original jurisdiction of all misdemeanors committed in the City of St. Louis," but the court was abolished in 1979.  *Vaughn v. State*, 763 S.W.2d 232,

236 (Mo. App. W.D. 1988) (citing Mo. Ann. Stat. § 479.180 (1949) (repealed)).  Nothing in the text of the ordinance or this history suggests, much less "clearly and unequivocally establishes," the City's agreement to defend a civil tort action before a Circuit Judge.

Notably, section 3.10.040(A) of the Revised Code authorizes the City Counselor to initiate certain actions "in the Circuit Court" for the State of Missouri, thus distinguishing the courts listed in subsection H from the "Circuit Court" in subsection A.  Section 3.10.040(H) does not mention the Circuit Court in its list, reaching only the "City Courts, or Justices of the Peace, or the St. Louis Court of Criminal Correction."  Further, Safeco presents no argument that the tort claims against Schmitt fall under the various jurisdictions of the City Courts or of the nonexistent Justices of the Peace or St. Louis Court of Criminal Corrections.  Doc. 34 at 8–11. Accordingly, the plain text of section 3.10.040(H) creates no duty for the City Counselor to defend Schmitt in a tort action brought in the Circuit Court.

Safeco points to a 2018 letter written by City Counselor Julian Bush to a City Alderwoman, which states that the PFPC is used "to pay judgments against the City and its employees generally, including those arising from the operations of the Division of Police."  *Id.* at 6 (quoting *Green*, 2020 WL 7056015, at *7–8).  Safeco argues that the very existence of the PFPC creates a duty for the City to defend all of its police officers.  *Id.*  But the City's decision to defend some of its police officers in tort actions does not create an ongoing obligation to defend all officers.  *See Roberts*, 242 S.W.2d at 298.  As the City points out, the City regularly provides a legal defense for some, but not all, of its police officers accused of misconduct.  *See, e.g., Hall v. City of St. Louis, et al.*, 4:19-cv-02579-JCH, 465 F. Supp. 3d 937 (E.D. Mo. 2020), *appeal dismissed sub nom. Hall v. City of St. Louis, Missouri*, No. 20-2267, 2021 WL 2628827 (8th Cir. Feb. 19, 2021) (the City Counselor's Office represented Mayor Krewson, Joseph

Marcantano, and Lawrence O'Toole, but not Dustin Boone, Christopher Myers, or Bailey Colletta); *Wahlers v. Hendren et al.*, 4:19-cv-03064-SRC, 2020 WL 1934992, at \*1 (E.D. Mo. Apr. 22, 2020) (the City Counselor's Office represents Gary Foster, but not Nathaniel Hendren or Patrick Riordan).

Safeco presents no other authority to show that the City assumed the duty to defend and indemnify its police officers in state tort actions.  Doc. 34 at 8–11.  Section 3.10.040(H) does not obligate the City to defend its employees in state circuit court, unlike the provision in *Kershaw*, which "clearly and unequivocally establishe[d]" such a duty.  *See Kershaw*, 440 S.W.3d at 461. The letter from City Counselor Bush does not create a statutory or contractual duty for the City to defend and indemnify its police officers—at most it indicates that the City may choose to defend and indemnify its employees at its own discretion.  *See Green*, 2020 WL 7056015, at \*7– 8; *see also Roberts*, 242 S.W.2d at 298.  Safeco provides no basis for the City's purported obligation to defend and indemnify Schmitt, therefore, the Court grants the City's motion to dismiss Count 1.  Doc. 29.

### B.    Count 2 – equitable subrogation

The City moves to dismiss Count 2 of Safeco's complaint, contending that Safeco's allegations fail to establish the necessary elements for equitable subrogation.  Doc. 30 at 5. "Subrogation exists to prevent unjust enrichment."  *Keisker v. Farmer*, 90 S.W.3d 71, 75 (Mo. banc 2002).  Equitable subrogation "provides that 'one who has been compelled to pay a debt that ought to have been paid by another is entitled to exercise all remedies which the creditor possessed against the other.'"  *Weitz Co., LLC v. Lexington Ins. Co.*, 786 F.3d 641, 645 (8th Cir. 2015) (internal citation omitted).  Under Missouri law, "[a] right to equitable subrogation belongs to 'one, not a volunteer, who pays another's debt.'"  *Scottsdale Ins. Co. v. Addison Ins.*

*Co.*, 448 S.W.3d 818, 832 (Mo. banc 2014) ("Equitable subrogation has been recognized by a majority of jurisdictions as a proper claim for an excess insurer to recover from a primary insurer's wrongful refusal to settle.").

Because the City had no obligation to defend or indemnify Schmitt, Safeco did not pay a debt of the City, and equitable subrogation does not apply.  Because Schmitt has no right to a defense or indemnification from the City, Safeco cannot recover its costs from the City either. *See Weitz Co., LLC*, 786 F.3d at 645.  Accordingly, the Court grants the City's motion to dismiss Count 2.  Doc. 29.

## IV.    Conclusion

The Court grants the City's motion to dismiss Counts 1 and 2 of Safeco's complaint and dismisses this action against the City.  Doc. 29; *see also* Fed. R. Civ. P. 12(b)(6).


So Ordered this 21st day of July, 2021.

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**

11